UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHEILA KNEPFLE,

    Plaintiff,

v.                                                  Case No. 8:18-cv-00543-T-60CPT

J-TECH CORPORATION, a foreign
corporation, J&P CYCLES, LLC, a
foreign corporation, LEMANS
CORPORATION, a foreign
corporation, and HJC CORP., a
foreign corporation,

    Defendants.
_____/

## ORDER DENYING HJC CORP.'S MOTION TO DISMISS
## FOR LACK OF PERSONAL JURISDICTION

This matter is before the Court on Defendant, HJC Corp.'s, motion to dismiss for lack of personal jurisdiction, filed on May 3, 2019. (Doc. # 66). Plaintiff filed a response in opposition on October 2, 2019. (Doc. # 111). The Court held a hearing on the motion on October 2, 2019. (Doc. # 113).[1] After reviewing the motion, response, court file, and record, the Court finds as follows:

---

[1] The Court notes that, on December 3, 2019, Plaintiff filed "Plaintiff's Notice of Providing Status Report in Compliance with Court Order." (Doc. # 128). Plaintiff states that the ability to continue discovery efforts renders an order on this motion unnecessary. However, HJC has not consented to personal jurisdiction – as made clear in the notice – and J&P Cycles, LLC has sought leave to file a cross claim that includes HJC. (Doc. # 124). As such, a determination on the issue of personal jurisdiction is necessary at this juncture.

# Introduction

In the modern global marketplace, Americans routinely purchase and use goods manufactured outside of the United States. Indeed, one news report found that over sixty percent of everything Americans buy is made overseas.[2] The legal implications of this routine aspect of modern American life have challenged our courts for decades. In particular, we have struggled with the issue of personal jurisdiction – determining the circumstances under which a foreign manufacturer of goods that end up in our country should be subject to suit in an American court. The case presented here concerns the issue of whether an American court has personal jurisdiction over a South Korean company that manufactures motorcycle helmets sold and used in Florida.

Addressing this seemingly simple legal issue requires the difficult application of a long – and somewhat complex – line of cases: *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980); *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 121 (1987); and more recently, *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 879 (2011). This case law illustrates that the legal analysis trial courts are required to use to determine personal jurisdiction in these regularly occurring factual scenarios remains unclear. As elaborated upon below, the Eleventh Circuit has yet to decide on the proper test for trial courts to apply in cases of this nature, and the United

---

[2] https://abcnews.go.com/WN/MadeInAmerica/mailform?id=12912252

States Supreme Court – despite multiple efforts – has been unable to establish a clear, workable rule commanding the support of a majority of its Justices.

After carefully analyzing the law and facts presented here, this Court finds that personal jurisdiction over the foreign manufacturer has been established under both the "stream of commerce test" and the "stream of commerce plus test."

## **Background**

The facts necessary to decide the instant motion are essentially undisputed. In 2013, Plaintiff purchased a 2009 model Z1R Nomad Sinister half-shell motorcycle helmet in Florida from a retail store operated by Defendant J&P Cycles, LLC ("J&P"). (Docs. ## 46, 65). The helmet was manufactured in South Korea by Defendant HJC Corp. ("HJC"), the largest manufacturer of motorcycle helmets in the world.[3] (Doc. # 111). HJC then sold the helmet to Defendant Lemans Corp. ("Lemans"), who took title to the helmet in Korea. (Doc. # 66-1). Lemans then sold the helmet to J&P. (Doc. # 46).

On February 18, 2014, Plaintiff was involved in a serious accident that sent her flying off her motorcycle. (*Id.*). As a result of an alleged design defect, the helmet flew off her head, and her skull landed – unprotected – on the pavement. (*Id.*). Plaintiff filed her initial complaint in state court on February 1, 2018, and the case was removed to this Court on March 7, 2018. (Docs. ## 1, 2). Upon discovering that HJC was the manufacturer of the helmet, Plaintiff filed an amended complaint

---

[3] Initially, there was confusion over who manufactured this model of helmet. The initial complaint made no mention of HJC because Plaintiff believed at the time that a different company, J-Tech Corp., had manufactured the helmet. Discovery later showed that HJC, not J-Tech, manufactured the helmet. As a result, Plaintiff voluntarily dismissed J-Tech from this action. *See* (Docs. ## 2, 46, 65, 86, 87).

listing HJC as a party on November 20, 2018. (Doc. # 46). HJC filed a motion to dismiss for lack of personal jurisdiction on May 3, 2019. (Doc. # 66). HJC states that it:

(1) is a citizen of Korea with its principal place of business in Korea;
(2) designs motorcycle helmets in Korea;
(3) manufactures its helmets in Korea, China, and Vietnam;
(4) sells helmets to distributors that take title to the product in Korea;
(5) has no further involvement with the helmets after title is transferred;
(6) does not sell to any distributors based in Florida;
(7) sells no helmets direct-to-consumer in the United States;
(8) does not solicit business from Florida residents;
(9) has a website, but products cannot be purchased off the website;
(10) has no business interests, assets, or personnel in Florida; and
(11) has not had a representative travel to Florida for this lawsuit.

*See* (Doc. #66-1).

Plaintiff received three extensions of time to respond to HJC's motion, including one expressly to conduct jurisdiction discovery that extended Plaintiff's deadline to September 3, 2019. (Docs. ## 69, 71, 89). Seeing no response from Plaintiff, the Court noticed a hearing on this matter. (Doc. # 96). Shortly thereafter, Plaintiff filed a motion to compel better responses to jurisdictional interrogatories (Doc. # 97), a motion to take the deposition of a corporate representative (Doc. # 98), and a motion to continue the October 2, 2019, hearing. (Doc. # 99). The Court denied Plaintiff's motion to continue. (Doc. # 101). The morning of the hearing, Plaintiff filed a response in opposition to HJC's motion arguing, among other things, that:

(1) HJC's helmets are sold in 167 retail locations throughout Florida;
(2) HJC knows its helmets are sold throughout Florida; and
(3) HJC America, Inc. – a wholly-owned subsidiary of HJC – engages in marketing directed at Florida on behalf of HJC.

(Doc. # 111, 111-1).[4] HJC did not seek to reply to Plaintiff's response in opposition to its motion. Christopher P. Tuite, United States Magistrate Judge, held a hearing on Plaintiff's motion to compel and motion to take deposition, and both were denied. *See* (Doc. # 119).

## Legal Standard

A defendant may file a motion to dismiss for lack of personal jurisdiction in its first Rule 12 response. *See* Fed. R. Civ. P. 12(b)(2). The plaintiff must establish a prima facie case for personal jurisdiction over the defendant. *Performance Industries Manufacturing, Inc. v. Vortex Performance Pty Ltd.*, Case No. 8:18-cv-00510-T-02AAS, 2019 WL 78840, at *2 (M.D. Fla. Jan. 2, 2019). Once a defendant challenges personal jurisdiction via affidavit, the plaintiff must rebut the evidence. *See Volt, LLC v. Volt Lightning Group, LLC*, 369 F. Supp. 3d 1241, 1246 (M.D. Fla. 2019); *see also Polskie Linie Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 972 (11th Cir. 1986). Doubts as to whether a prima facie case for personal jurisdiction has been made are construed in favor of the defendant and unrefuted allegations in the defendant's affidavit are presumed to be true. *3Lions Publishing, Inc. v. Interactive Media Corp.*, 389 F. Supp. 3d 1031, 1036 (M.D. Fla. 2019); *Performance Industries*, 2019 WL 78840, at *2.

## Analysis

When analyzing personal jurisdiction, the Court must determine: (1) whether personal jurisdiction over the defendant exists under the forum's long-arm statute;

---

[4] Plaintiff filed several other notices and documents with her response in opposition. (Docs. ## 108, 109, and 110).

and (2) whether exercising personal jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).

### *Long-Arm Statute*

A plaintiff may satisfy the long-arm statute by tracking the language of the statute in its pleadings. *3Lions*, 389 F. Supp. 3d at 1037 (citing *Wash. Cap. Corp. v. Milandco, Ltd., Inc.*, 695 So. 2d 838, 841 (Fla. 4th DCA 1997)). There is no requirement to plead specific supporting facts for the jurisdictional allegations in the pleadings. *Id.* Under Florida's long-arm statute, a nonresident defendant can submit itself to personal jurisdiction in Florida by

> [c]ausing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury … (b) [p]roducts, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

§ 48.193(1)(a)(6)(b), *Florida Statutes*.

Plaintiff's amended complaint states she was injured as a result of a design defect in an HJC-manufactured helmet that was distributed in Florida, that Plaintiff purchased and used in Florida, and ultimately resulted in Plaintiff's injury in Florida. Plaintiff has, thus, tracked the language of Florida's long-arm statute in her amended complaint and has adequately pled personal jurisdiction under Florida's long-arm statute.

*Due Process Analysis*

"The Due Process Clause protects an individual's right to be deprived of life, liberty, or property only by the exercise of lawful power" by limiting "the power [of a State] … to render a valid personal judgment against a nonresident defendant." *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 879 (2011); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (citing *Kulko v. Cal. Super. Ct.*, 436 U.S. 84, 91 (1978)); *see* U.S. Const. amend. XIV. This constitutional protection ensures that, "neither statute nor judicial decree may bind strangers to [a] State." *See J. McIntyre*, 564 U.S. at 880. A court must, therefore, have a sufficient constitutional basis to exercise personal jurisdiction over a nonresident defendant.

There are two types of personal jurisdiction: general personal jurisdiction and specific personal jurisdiction. General personal jurisdiction may only be applied to nonresident corporate defendants "when the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)) (internal quotations omitted); *see Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945). Here, there appear to be no facts asserted, nor argument made, suggesting that HJC is "at home" in Florida. Therefore, the Court only considers the issue of specific personal jurisdiction.

Specific personal jurisdiction may be exercised over a foreign defendant where the defendant:

> submits to the judicial power of an otherwise foreign sovereign to the extent that power is exercised in connection with the defendant's activities touching on the State. In other words, submission through contact with and activity directed at a sovereign may justify specific jurisdiction in a suit arising out of or related to the defendant's contacts with the forum.

*J. McIntyre*, 564 U.S. at 881 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)) (internal quotations omitted). Under such circumstances, a lawsuit against a nonresident defendant "does not offend traditional notions of fair play and substantial justice" because the defendant has established "sufficient minimum contacts" with the forum and the lawsuit is related to those same minimum contacts. *See id.* at 880–81. The Court applies a three-part test to determine if the exercise of personal jurisdiction is constitutional:

(1) whether the plaintiff's claims arise out of or relate to the defendant's contacts with the forum;
(2) whether the nonresident defendant has purposefully availed itself of the forum; and
(3) whether applying personal jurisdiction comports with traditional notions of fair play and substantial justice.

*Louis Vuitton*, 736 F.3d at 1355. For the reasons explained below, this Court's exercise of personal jurisdiction over HJC does not violate due process.

1. <u>Relatedness</u>

The relatedness element of the specific personal jurisdiction test focuses on "the direct causal relationship between the defendant, the forum, and the litigation." *See Performance Industries*, 2019 WL 78840, at *5 (quoting *Louis Vuitton*, 736 F.3d at 1355–56). This element is meant to determine only relatedness, not sufficiency, and can therefore be met even "in the most attenuated manner." *See id*. While the Eleventh Circuit has not "developed a specific approach to

determining whether a defendant's contacts relate to the plaintiff's claims," the contacts must, at minimum, be (1) "a but-for cause of the tort," and (2) a "foreseeable consequence" of the contacts with the forum. *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (quoting *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222–23 (11th Cir. 2009)).

This action concerns a defective product that was distributed in Florida, purchased in Florida, used in Florida, and that caused injury in Florida to a citizen of Florida. As such, the alleged design defect is a "but-for" cause of Plaintiff's injury and is a foreseeable consequence of manufacturing a defective safety product that was distributed into Florida. Therefore, the Court finds that Plaintiff's injury is related to HJC's contacts with Florida.

2. <u>Purposeful Availment</u>

To lawfully exercise specific personal jurisdiction over a nonresident defendant, the defendant must have purposefully availed itself of the forum. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Here, HJC allegedly did so by placing its products into the stream of commerce. *See World-Wide Volkswagen*, 444 U.S. at 298. The Supreme Court has stated that:

> if the sale of a product of a manufacturer or distributor … is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve[,] directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has … been the source of injury to its owner … The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

*Id.* at 297–98. However, the Supreme Court has not adopted a majority rule for trial courts to apply this principle, resulting in a circuit split between two tests: (1) the "stream of commerce test," and (2) the "stream of commerce plus test." The Eleventh Circuit has not yet chosen an appropriate test for trial courts to apply when confronted with as issue such as this. *See Brown v. Bottling Group, LLC*, 159 F. Supp. 3d 1308, 1313 (M.D. Fla. 2016) (citing *Vermeulen v. Renault U.S.A., Inc.*, 985 F.2d 1534, 1548 (11th Cir. 1993)). In an abundance of caution, the Court considers both tests.

      i.      <u>Stream of Commerce Test</u>

Under the "stream of commerce test," a forum may exercise personal jurisdiction over a foreign defendant even if it "did not design or control the system of distribution that carried its [product] into [the forum]" so long as it "was aware of the distribution system's operation and it knew that it would benefit economically from the sale in the forum of [its] products." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 121 (1987) (Brennan, J., concurring).

Critics of the "stream of commerce test" often describe it as little more than a mere foreseeability test. *See J. McIntyre*, 564 U.S. at 882–83. Clearly, a "mere foreseeability" test would not satisfy the constitutional protections of the Fourteenth Amendment. However, the circuits that apply the "stream of commerce test" do not look exclusively to foreseeability. Rather, these circuits consider additional factors such as the level of control the defendant has in the distribution

chain, and whether the defendant intended to access the benefits of the forum's marketplace.[5]

It is undisputed that HJC sells more than 500,000 helmets every year. It intentionally places those items into the stream of commerce, and knowingly sells them to American distributors, who bring HJC's products to the United States. Moreover, HJC itself publishes a list of 167 retail locations where its products can be purchased throughout Florida. Not only does HJC specifically know its helmets will end up in Florida, but it actively seeks the benefit of the Florida market. These facts establish an intentional, continuous, and regular flow of sales into the forum. *See J. McIntyre*, 564 U.S. at 889 (Breyer, J., concurring). The facts presented here leave no doubt that HJC knows it benefits from the Florida market, wants to continue to benefit from the Florida market, and has taken deliberate action to do so. The Court therefore finds that these facts are sufficient to find that HJC purposefully availed itself of Florida under the "stream of commerce test."

---

[5] *See, e.g., Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013) (explaining that "mere foreseeability or awareness" is sufficient for personal jurisdiction only if the defendant's contacts are not "random, fortuitous, or attenuated, or [the result] of the unilateral activity of another party or third person") (internal quotations omitted); *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 597 (8th Cir. 2011) (stating there is personal jurisdiction where "a foreign manufacturer [ ] pours its products' into a regional distributor with the expectation that the distributor will penetrate a discrete, multi-State trade area"); *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 551 (7th Cir. 2004) (where there is no evidence as to "how the [product] in question got to [the forum,] … [i]t is possible that the 'unilateral activity' of a third party, rather than the defendant's distribution scheme, landed the [product] in [the forum], which is the very scenario that doomed the plaintiffs' case in *World–Wide Volkswagen*"); *Clune v. Alimak AB*, 233 F.3d 538, 542 (8th Cir. 2000) ("[W]hen a seller heads a distribution network it realizes the much greater economic benefit of multiple sales in distant forums, which in turn may satisfy the purposeful availment test.") (internal quotations omitted).

### ii. Stream of Commerce Plus Test

The "stream of commerce plus test" more robustly protects the interests of nonresident defendants. *See Asahi*, 480 U.S. at 112 (O'Connor, J., plurality). Without these protections, as Justice Kennedy explained, "[t]he owner of a small Florida farm might sell crops to a large nearby distributor … who might distribute them across the country … [and then] the farmer could be sued in Alaska or any number of other States' courts without ever leaving town." *J. McIntyre*, 564 U.S. at 885. Under the "stream of commerce plus test," a defendant must take "action … purposefully directed toward the forum" to be subject to personal jurisdiction. *Asahi*, 480 U.S. at 112 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985)).

The "stream of commerce plus test" was articulated by Justice O'Connor in *Asahi* and echoed by Justice Kennedy in *J. McIntyre*. In *Asahi*, a Japanese manufacturer was sued in California because it sold a valve assembly to a Taiwanese company, who then placed it in a tire tube and sold the tube in California, where it was placed in a motorcycle that was sold in California. *See Asahi*, 480 U.S. at 106. In *J. McIntyre*, a British manufacturer sold a metal-shearing machine to a distributor, who took title to the machine in the United Kingdom, transported it to the United States, and sold it in New Jersey – where no more than *four* of the manufacturer's machines had ever been sold. *J. McIntyre*, 564 U.S. at 878 (emphasis added). If the connections between the defendants listed above and the forum states seem attenuated, it is because they are. In both *Asahi* and *J. McIntyre*, the stream of commerce was too insignificant, erratic, or

unmanaged to – absent additional supporting evidence – find that the nonresident defendant had taken action intending to benefit from the forum State's market.

Here, it is clear from the undisputed facts that HJC intended to benefit from the Florida market. HJC's products are not only sold in 167 locations throughout the State, but HJC compiled information on those locations and advertised them on its website. Advertising its Florida locations constitutes purposeful availment. *See Morris v. SSE, Inc.*, 843 F.3d 489, 493 (11th Cir. 1988) (citing *Asahi*, 480 U.S. at 114 (O'Connor, J., plurality)). Common sense indicates that if HJC did not intend to benefit from the sale of helmets in Florida, it would not advertise its Florida retail locations on its website. In fact, it would likely not be interested at all in compiling retail information or data regarding the sale of its helmets in Florida if it did not intend to consider and use that information to continue to target the Florida market.

The Court simply cannot fathom a scenario where HJC's helmets are regularly sold across Florida and HJC advertises where those helmets are sold, but it is somehow disinterested or uninvolved in the Florida market. As a result, even under the more stringent "stream of commerce plus" test, the Court finds that the facts presented are sufficient to find that HJC has purposefully availed itself of this forum.

    3.    <u>Fair Play and Substantial Justice</u>

A court may assert personal jurisdiction over a non-resident defendant only when doing so "does not offend 'traditional notions of fair play and substantial

justice.'" *Int'l Shoe,* 326 U.S. at 316 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)). In this analysis, a court must consider factors including, but not limited to:

> (1) the burden on the defendant;
> (2) the forum's interest in adjudicating the dispute;
> (3) the plaintiff's interest in obtaining convenient and effective relief; and
> (4) the judicial system's interest in resolving the dispute.

*Louis Vuitton*, 736 F.3d at 1358; *Oldfield*, 558 F.3d at 1221 (quoting *Asahi*, 480 U.S. at 114). Here, while the burden on HJC to litigate in Florida may be high, several factors support exercising personal jurisdiction.

First, Florida has a substantial interest in this claim. A defective safety device was allegedly sold, purchased, and used in Florida, causing injury to a Florida resident. Florida has a substantial interest in consumer protection and public safety, and that interest is only heightened in the context of defective safety equipment. Further, Florida naturally has an interest in resolving litigation where the vast majority of relevant underlying transactions and facts point to Florida.

Second, the judicial system has a substantial interest in resolving this case because a failure to do so would render HJC effectively "judgment proof." *See Burger King*, 471 U.S. at 486 (citing *McGee v. Int'l Life. Ins. Co.*, 355 U.S. 220, 223 (1957)). If Florida cannot render a judgment on these facts, there is no forum that can. Such a decision would insulate the nonresident defendant from being subject to suit and redress in a manner that far exceeds the scope of protections warranted under the Fourteenth Amendment. The judiciary need not – and should not – impose a hyper-protectionist approach where neither the original meaning of the text of the Fourteenth Amendment nor binding precedent requires it to do so.

Third, dismissing HJC could leave Plaintiff with no ability to recover at all. While Defendant Lemans and Defendant J&P may be subject to strict liability, Florida law apportions damages in products liability actions under a theory of comparative fault. *See* § 768.81(3)(b), *F.S.*; *Lawrence v. Brandell Prod., Inc.*, 619 So. 2d 427, 428–29 (Fla. 1st DCA 1993) (stating that "a retail seller [or distributor] may be held strictly liable in tort for damage occasioned to the property of one who purchases the product and prepares it for use by an ultimate consumer"). Under comparative fault apportionment, even if Lemans and J&P were strictly liable, they may have had nothing to do with the alleged design defect nor any way to detect the defect through reasonable inspection. *See Evanston Ins. Co. v. Dimeda Instrumente GMBH*, Case No. 16-80467-CIV-DIMITROULEAS, 2016 WL 10953759, at *2 (S.D. Fla. July 5, 2016) (explaining that "the mere selling of a defective product by a retailer does not constitute fault" under Florida law); *Cataldo v. Lazy Days R.V. Center, Inc.*, 920 So. 2d 174, 178 (Fla. 2d DCA 2006) (stating that the Florida Supreme Court has that "observed that the doctrine of strict liability does not operate to make the manufacturer or seller an insurer" of the product); *Masker v. Smith*, 405 So. 2d 432, 433–34 (Fla. 5th DCA 1981) (stating that there is no duty to discover "latent defects which … could not be discovered by a reasonable and customary inspection"). Under such circumstances, leaving HJC – the manufacturer and source of the alleged defect – out of the case could result in Plaintiff being completely unable to recover compensation for her injuries.

As a result, after carefully reviewing the fairness factors in the context of the facts presented here, the Court finds that the fairness factors do not warrant dismissal of HJC on personal jurisdiction grounds.

## Conclusion

For the reasons stated above, the Court finds that it may exercise personal jurisdiction over HJC. Therefore, HJC Corp.'s motion to dismiss (Doc. # 66) is **DENIED**. HJC Corp. is directed to file an answer to Plaintiff's amended complaint on or before January 6, 2020.

**DONE** and **ORDERED** in Chambers in Tampa, FL this 11th day of December, 2019.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**