**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

SHEILA KNEPFLE,

    Plaintiff,

vs.

J-TECH CORPORATION, a foreign corporation; J & P CYCLES, LLC, a foreign corporation; LEMANS CORPORATION, a foreign corporation; and HJC CORPORATION, a foreign corporation,

    CASE NO.: 8:18-CV-00543-TPB-CPT

    Defendants.                                         /

**HJC CORPORATION'S MOTION FOR RECONSIDERATION OF ORDER DENYING HJC'S MOTION TO DISMISS [DE 129] AND ALTERNATIVE REQUEST FOR CERTIFICATION UNDER 28 U.S.C. §1292(b)**

Defendant, HJC Corporation ("HJC"), pursuant to Rule 60 of the Federal Rules of Civil Procedure, respectfully requests this Court reconsider its Order denying HJC's Motion to Dismiss [DE 129] and, alternatively, requests this this Court amend its Order to certify the question of personal jurisdiction over HJC for interlocutory review under 28 U.S.C. § 1292(b). In support HJC states:

    **I.    MOTION FOR RECONSIDERATION**

HJC requests this Court reconsider its December 11, 2019 Order denying HJC's Motion to Dismiss because reconsideration is necessary to correct clear errors and manifest injustice.

Courts have recognized that "the need to correct clear error or manifest injustice" is one of three grounds justifying reconsideration. *Florida College of Osteopathic*

*Medicine, Inc. v. Dean Witter Reynolds, Inc.*, 12 F.Supp.2d 1306, 1308 (M.D. Fla. 1998). "[W]hen a party alleges that reconsideration is due because of the court's misunderstanding or misapplication of the law, the movant must demonstrate that the court's mistake involved 'a "plain misconstruction" of the law and the erroneous application of that law to the facts.'" *Buckner v. Campbell*, 2010 WL 5058314 (S.D. Fla. 2010)(quoting *Seven Elves, Inc. v. Eskenzazi*, 635 F.2d 396 (5th Cir. 1981)).

In this case, the Court (1) misconstrued the minimum contacts test for specific jurisdiction; and (2) the Court misunderstood Florida's adoption and application of strict liability when it asserted that "leaving HJC – the manufacturer and source of the alleged defect – out of the case could result in Plaintiff being completely unable to recover compensation for her injuries." DE 129 at p. 15.

    A. <u>The Court misconstrued the "minimum contacts" test and misapplied it to the facts of this case</u>

The first two prongs of the minimum-contacts test require (a) that the defendant must have contacts related to or giving rise to the plaintiff's cause of action and (b) the defendant, through **those contacts**, purposely availed itself of the forum. "In order for a state court to exercise specific jurisdiction, 'the suit' must aris[e] out of or relat[e] to the defendant's contacts with the forum.'" *Bristol-Myers Squibb Co v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017)(quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014)(emphasis omitted). As the Eleventh Circuit explained in *Fraser v. Smith*, 594 F.3d 842 (2010):

> First, the defendant must have contacts related to or giving rise to the plaintiff's cause of action. Second, the defendant must, **through those contacts,** have purposefully availed itself of forum benefits….

*Fraser v. Smith*, 594 F.3d 842, 850 (emphasis added).  The Eleventh Circuit held that in determining whether the defendants contacts with the forum relate to the plaintiff's claims, the contacts must be a "but-for" cause of the tort.  *Id.*  The court further explained that a closer and more substantial causal relationship must exist between the relevant contacts and the alleged tort.  *Id*. citing *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1224.  Accordingly, under proper application of the test, the contacts used to determine purposeful availment, must be contacts that are related to or give rise to the cause of action.

In this case, the Court's determination that HJC purposely availed itself of the Florida market under both the "stream of commerce" and "stream of commerce plus" tests was based on the facts that HJC sells more than 500,000 helmets every year and that HJC's website lists 167 retailers in Florida where HJC-brand helmets can be purchased. DE 129 at pp. 11 and 13.  Further, under the stream of commerce plus test, the Court stated: "In fact, [HJC] would likely not be interested at all in compiling retail information or data regarding the sale of its helmets in Florida if it did not intend to consider and use that information to continue to target the Florida market."  DE 129 at p. 13.  However, the facts relied by the Court misconstrue the critical undisputed fact that the subject helmet was a Z1R-brand helmet and not an HJC-brand helmet.

The 500,000 helmets manufactured and sold to distributors by HJC refers to HJC-brand helmets, not Z1R-brand helmets.  Moreover, the HJC Helmets website is administered in the U.S. by HJC America, Inc. and HJC America, Inc. does not and did not, perform any marketing or advertising for Z1R-brand helmets such as the Subject

3

Helmet. DE 97-2 at pp. 2, 4. As such, the Z1R-brand helmets were not advertised or marketed on the HJC website, and the dealers identified on HJC's website are sellers who may sell HJC-brand helmets and not necessarily Z1R-brand helmets. *Id.* at pp. 4, 7. Importantly, contrary to the Court's conclusion that HJC is "interested in compiling retail information or data regarding the sale of helmets in Florida," HJC does not compile or maintain information regarding the breakdown of helmet sales by state, nor does it have information regarding the number of helmets sold in Florida. *Id*. at p. 7. The HJC-brand dealer information on HJC's website is provided to HJC America, Inc. by the distributors of HJC-brand helmets and not compiled or determined by HJC. *Id.* Thus, the "contacts" relied upon by the Court to conclude that HJC purposely availed itself of Florida were contacts that are not related to the contacts giving rise to Plaintiff's cause of action – the manufacture and sale to LeMans of Z1R-brand helmets. In light of this, the Court should reconsider its Order denying HJC's Motion to Dismiss.

    B. <u>The Court misunderstood Florida's adoption and application of strict liability and incorrectly concluded that dismissal of HJC could leave Plaintiff without a remedy</u>

As part of its analysis, the Court concluded that dismissing HJC could leave plaintiff with no ability to recover at all. DE 129 at p. 15. However, this conclusion plainly misunderstands strict liability under Florida law and should be reconsidered.

Florida's adoption of strict liability and Section 402A of the Restatement (Second) of Torts in *West v. Caterpillar* was intended to establish liability for defectively designed or manufactured products without requiring the injured party to prove negligence or other culpable conduct. *West v. Caterpillar Tractor Co., Inc.*, 336 So. 2d

4

80, 90 (Fla. 1976) ("Strict liability does not make the manufacturer or seller an insurer. Strict liability means negligence as a matter of law or negligence per se, the effect of which is to remove the burden from the user of proving specific acts of negligence.")  As explained by the Florida Supreme Court: "In order to hold a manufacturer liable on the theory of strict liability in tort, the user must establish the manufacturer's relationship to the product in question, the defect and unreasonably dangerous condition of the product, and the existence of the proximate causal connection between such condition and the user's injuries or damages." *Id*. at 87.

Since the adoption of strict liability in *West*, Florida courts have held that all parties in the chain distribution of a new product can be held strictly liable for injury caused by a defective product, not just the manufacturer.  *Samuel Friedland Family Enterprises v. Amoroso*, 630 So. 2d. 1067 (Fla. 1994); *Visnoski v. J.C. Penney Co.*, 477 So. 2d 29 (Fla. 2d DCA 1985); *Rivera v. Baby Trend, Inc.*, 914 So. 2d 1102 (Fla. 4th DCA 2005).  In fact, Note 6 to Florida's standard jury instruction on Strict Liability states "In some cases, it may be appropriate to instruct the jury that, in addition to the designer and manufacturer, any distributor, importer, or seller in the chain of distribution is liable for injury caused by a defective product."  Fla. Std. Jur. Inst. 403.7 (attached as Exhibit "A").

The cases and statute cited by the Court in the Order are inapposite.  *Masker v. Smith* and *Cataldo v. Lazy Days R.V. Center, Inc.* involved the courts' refusal to extend the doctrine of strict liability to the sellers of used products.  Indeed, in *Fuquay v. Revels Motors, Inc.* cited by the *Cataldo* court, the First District Court of Appeal explained that

5

the complaint may have been sufficient to state a cause of action against a seller of a new automobile, but the seller of used cars:

> had no responsibility for the placement of the automobile into the stream of commerce. A vendor so removed from the original marketing chain is unable to exert any significant influence on the manufacturer, and we agree with the Illinois Supreme Court's determination in Peterson, supra, that in such circumstances the vendor should not be liable…for latent design defects in the product.

*Fuquay*, 389 So. 2d 1238, 1240 (Fla. 1st DCA 1980). All strictly liable parties are jointly responsible.

In actuality, *Evanston Ins. Co v. Dimeda Instrumente GMBH* cited by the Court, reflects the manner in which strict liability works in Florida when a party without fault is held liable. In that case, the insurer for a product seller settled the plaintiff's claim for injuries caused by a defect in the product's manufacture and/or design and brought a claim for indemnification against the manufacturer *Evanston Ins. Co.*, 2016 WL 10953759 at *1-2 (S.D. Fla. 2016). Because the seller was strictly liable and without independent fault of its own, the court found it was entitled to seek indemnification from the alleged manufacturer of the product. *Id.* at *2. *See K-mart Corp. v. Chairs, Inc.*, 506 So. 2d 7, 9-10 (Fla. 5th DCA 1987) (finding seller of defective swing set was "vicariously, constructively, derivatively or technically liable" for the product defect and entitled to seek indemnification against manufacturer). In this way, the injured party is made whole for their injuries and the manufacturer is ultimately responsible for the damages. Here, Plaintiff is able to pursue her strict liability claims against the distributor (Lemans) and/or the retailer (J&P Cycles) of the subject helmet. If she establishes the

helmet was defective and the defect caused or enhanced her injuries, then she has a right to recover against those parties without regard for whether HJC is a defendant.

Further, Florida Statutes Section 768.81(3)(b) does not change this dynamic for how strict liability operates in Florida. This statutory provision was enacted solely for the limited purpose of overruling *D'Amario v. Ford Motor Co.*, 806 So. 2d 424 (Fla. 2001). *See* 2011 Fla. Sess. Law Serv. Ch. 2011-215, Section 2.

In *D'Amario*, the Supreme Court held that "principles of comparative fault concerning apportionment of fault as to the cause of the underlying crash will not ordinarily apply in crashworthiness or enhanced injury cases." *Id.* at 426. According to *D'Amario*, "the fault of the manufacturer may not be compared or apportioned with the fault of the driver of the vehicle who allegedly caused the initial crash." *Id*. Under *D'Amario*, a drunk driver who lost control of his car and hit a telephone pole and claimed an airbag defect enhanced his injuries could recover in strict liability without reduction in his damages for his fault in causing the crash.

In recognition of the inequitable result created by *D'Amario*, the legislature enacted Section 768.81(3)(b) which makes clear that the jury should consider all fault of the parties who **contributed to the accident**. According to the legislature:

> The Legislature intends that this act be applied retroactively and overrule *D'Amario v. Ford Motor Co.*, 806 So. 2d 424 (Fla. 2001), which adopted what the Florida Supreme Court acknowledged to be a minority view. That minority view fails to apportion fault for damages consistent with Florida's statutory comparative fault system, codified in s. 768.81, Florida Statutes, and leads to inequitable and unfair results, regardless of the damages sought in the litigation. The Legislature finds that, in a products liability action as defined in this act, fault should be apportioned among all responsible persons.

2011 Fla. Sess. Law Serv. Ch. 2011-215, Section 2. Under the clear language of Section 768.81(3)(b), the jury is only required to apportion liability among the persons responsible for causing the accident and not among the strictly liable defendants for the alleged product defect. Accordingly, Section 768.81(3)(b) does not overrule other Florida strict liability jurisprudence and does not preclude the jury from finding Lemans Corporation and J&P Cycles strictly liable for any defect in the helmet.

To the extent the Court denied HJC's Motion to Dismiss on the basis that dismissing HJC would leave Plaintiff without a remedy for the allegedly defective helmet, the Court's ruling is based upon plain misunderstanding of Florida's adoption and application of strict liability. Accordingly, the Court should reconsider HJC's Motion.

WHEREFORE, because the Order denying HJC's Motion to Dismiss was based upon the plain misunderstanding and misapplication of the law and the erroneous application of that law to the undisputed facts, this Court should reconsider the Order and grant HJC's Motion to Dismiss.

## II. ALTERNATIVE REQUEST FOR CERTIFICATION UNDER 28 U.S.C. §1292(b)

Alternatively, HJC respectfully requests that this Court amend its Order to certify the personal jurisdictional question for interlocutory review under 28 U.S.C. § 1292(b). Under the statute, this Court is authorized to "certify an interlocutory order for appeal if the order (i) involves a controlling question of law; (ii) as to which there is substantial ground for difference of opinion, and (iii) an immediate appeal from the order may materially advance the ultimate termination of the litigation." The question of whether

HJC is subject to jurisdiction in Florida is, by its very nature, a "controlling question of law." If the Eleventh Circuit were to disagree with this Court on this legal question, the litigation against HJC will end. As the parties' briefs and this Court's order make clear, there are substantial grounds for difference of opinion on this question. And, because an appellate determination in Defendant's favor would terminate this action as to HJC, there is no question that an immediate appeal may materially advance the ultimate termination of the litigation.

    A. <u>The Court's order involves a controlling question of law</u>.

Section 1292(b) requires a question of law, rather than a question of fact. *McFarlin v. Conseco Services, LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004). There must be a "question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine" and it requires more than "the application of settled law to fact." *Id*. The personal jurisdiction question presented here easily satisfies that standard; because the Eleventh Circuit precedent is unclear, this is not a matter of applying settled law to these undisputed facts. Instead, the law regarding personal jurisdiction in this Circuit needs to be settled.

This Court's conclusion that HJC is subject to personal jurisdiction is a question of law. *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009)("We have consistently held that the issue of whether personal jurisdiction is present is a question of law and subject to *de novo* review."). Courts within the Eleventh Circuit have granted certification when the order involves the legal issue of personal jurisdiction. *E.g. McGow v. McCurry*, 412 F. 3d 1207, 1213 (11th Cir. 2005)(certification

of denial of Auto Club's motion to dismiss for lack of personal jurisdiction); *Army Times Publ'g Co. v. Watts*, 730 F.2d 1398, 1398-99 (11th Cir. 1984)(certification of denial of newspaper's motion to dismiss); *Cox Enterprises, Inc. v. Holt*, 678 So. 2d 932 (11th Cir. 1982)(certification of denial of defendants' motion to dismiss).

A question of law is "controlling" under section 1292(b) if it leads to the "disposition of at least a claim, if not the entire case itself." *Harris v. Luckey*, 918 F.2d 888, 892 (11th Cir. 1990); *see also Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974)("A controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on final appeal."). Here, the fundamental question of law regarding personal jurisdiction over HJC is "controlling" under section 1292(b) because reversal of the Order would terminate the action against HJC.

B. <u>There is substantial ground for difference of opinion</u>.

There is substantial ground for difference of opinion as to this controlling question of law. Indeed, in its Order, this Court already recognized that the fundamental legal standards are unclear: "This case law illustrates that the legal analysis trial courts are required to use to determine personal jurisdiction in these regularly occurring factual scenarios remains unclear." D.E. 129 at page 2. And this Court observed that "the Eleventh Circuit has yet to decide on the proper test for trial courts to apply in cases of this nature[.]" *Id*.

Among other things, this Court recognized that "the Eleventh Circuit has not developed a specific approach to determining whether a defendant's contacts relate to the plaintiff's claims." DE 129 at pages 8-9. Further, this Court recognized that there is a

10

"circuit split" between the "stream of commerce test" and the "stream of commerce plus test," and "the Eleventh Circuit has not yet chosen an appropriate test for trial courts to apply when confronted with an issue such as this." *Id*. at page 10.

Although this Court considered various approaches and tests, it is critical that the Eleventh Circuit first settle the law in the Circuit. Only when the legal tests, standards and factors are clearly established can a proper determination of jurisdiction be made based on the undisputed facts of this case. In addition to the fundamental legal matters already mentioned by this Court, the Eleventh Circuit needs to determine the proper standard for evaluating the significance, if any, of listing independent Florida retailers on a foreign company's passive website.

In *Harris v. Luckey*, 918 F.2d 888 (11th Cir. 1990), the district court certified its ruling under section 1292(b), and the Eleventh Circuit accepted the appeal. The district court expressed uncertainty regarding the meaning of orders issued by the Eleventh Circuit in a prior appeal involving that same case. *Id*. at 891-892. The district court thought it was bound by "law of the case" but considered its ruling to involve an issue of "first impression" justifying interlocutory appeal. *Id*. at 892. The Eleventh Circuit agreed, finding uncertainty in its precedents regarding the law of the case doctrine. *Id*. at 892-893.

Here, because this Court has already expressed uncertainty regarding Eleventh Circuit personal jurisdiction precedent, and the case presents an issue of first impression, an interlocutory appeal is fully justified and completely necessary under the circumstances. *See also Bastian v. USAA*, 150 F. Supp. 3d 1284, 1296 (M.D. Fla.

2015)(certifying issue of first impression when "reasonable jurists might disagree" with district court's threshold determinations); *Faye L. Roth Revocable Trust v. UBS Painewebber Inc.*, 323 F. Supp. 2d 1279, 1302 (S.D. Fla. 2004)(certifying appeal when the Eleventh Circuit had "not definitively answered" one question and doubts existed as to how the Eleventh Circuit would decide other issues).

    C.  <u>Immediate appeal may materially advance the ultimate termination of the litigation</u>.

An interlocutory appeal is warranted when the appeal "would serve to avoid a trial or otherwise substantially shorten the litigation." *McFarlin v. Conseco Services, LLC*, 381 F.3d at 1259. If the appeal "could shorten the time, effort and expense of the litigation," the appeal would materially advance the ultimate termination of the litigation. *Id*.

In *McFarlin v. Conseco Services, LLC*, the Eleventh Circuit examined the legislative history behind section 1292(b), and noted several examples where interlocutory appeal was viewed as justified based on considerations of judicial efficiency and expense. The Eleventh Circuit quoted the following paragraph from the Senate Judiciary Committee Report, S. Rep. No. 2424 (1958), which provides the following example of the type of situation Congress intended § 1292(b) to address:

> [I]n a recent case, a motion to dismiss for want of jurisdiction was filed in the district court early in the proceedings. The district court denied the motion and the matter then proceeded to trial. The disposition of that case took almost 8 months. Upon final order the case was appealed and the court of appeals determined that the district court did not have jurisdiction and entered an order accordingly. Had this legislation been in effect at that time, the district judge could have stated in writing his opinion

> that the motion was controlling and the defendant could thereupon have made application to the court of appeals for a review of the order denying the motion. Had the court of appeals entertained such a motion and reached the conclusion which it ultimately did, it would have resulted a saving of the time of the district court and considerable expense on the part of the litigants.

381 F.3d at 1257. The Eleventh Circuit noted that the examples involved "potentially dispositive legal questions collateral to the merits that might render unnecessary a lengthy trial." *Id. See also Harris v. Luckey*, 918 F.2d at 892 (the district court granted certification so any "error can be corrected before the necessarily protracted proceedings in this complex case of first impression have consumed substantial judicial and financial resources"); *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996)("We agree with the district court that an order may involve a controlling question of law if it could cause the needless expense and delay of litigating an entire case in a forum that has no power to decide the matter").

Under that standard, the subject Order involves the very type of controlling question of law that justifies certification under section 1292(b). Without a doubt, permitting HJC to pursue an interlocutory appeal would meet the purpose of avoiding expenses and shortening the litigation.

If the Eleventh Circuit disagrees with this Court's jurisdictional analysis, it will most likely direct a dismissal of HJC from the suit and thus limit the remaining issues to be litigated. Any delay inherent in allowing the interlocutory appeal does not outweigh the potential cost to the parties and this Court if the claim against HJC were to proceed to trial but later be dismissed by the Eleventh Circuit on jurisdictional grounds.

Accordingly, allowing HJC to take an interlocutory appeal may materially advance the ultimate termination of the litigation.

WHEREFORE, in the alternative to the Motion for Reconsideration, HJC requests that this Court should amend its Order to certify the personal jurisdictional question for interlocutory review under 28 U.S.C. § 1292(b).

Respectfully submitted,

s/ Steven I. Klein
E. H. "SKIP" EUBANKS, JR.
Florida Bar No.: 0612091
E-mail: seubanks@rumberger.com
STEVEN I. KLEIN
Florida Bar No.: 0675245
E-mail: sklein@rumberger.com
RUMBERGER, KIRK, & CALDWELL, P.A.
300 South Orange Avenue, Suite 1400
Orlando, Florida 32801
Tel: 407.872.7300
Fax: 407.841.2133

James C. Ughetta
*Admitted Pro Hac Vice*
E-mail: james.ughetta@littletonpark.com
Brian Keith Gibson
*Admitted Pro Hac Vice*
E-mail: keith.gibson@littleonpark.com
LITTLETON, PARK, JOYCE, UGHETTA & KELLY, LLP
4 Manhattanville Road, Suite 202
Purchase, NY 10577
Tel: 914.417.3400

Attorneys for Defendant HJC Corporation

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 6, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of

electronic filing to the following:  **Margaret A. McGarrity, Esquire; Crystal Sebago, Esquire; Scott B. Albee, Esquire; Ross S. Felsher, Esquire; Jaime L. Reitz, Esquire**. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:  **James P. Mancuso, Esquire, James P. Mancuso P.A., P.O. Box 7800, St. Petersburg, FL  33734.**

s/ Steven I. Klein
E. H. "SKIP" EUBANKS, JR.
Florida Bar No.:  0612091
E-mail:  seubanks@rumberger.com
STEVEN I. KLEIN
Florida Bar No.:  0675245
E-mail:  sklein@rumberger.com
RUMBERGER, KIRK, & CALDWELL, P.A.
300 South Orange Avenue, Suite 1400
Orlando, Florida 32801
Tel:  407.872.7300
Fax:  407.841.2133

James C. Ughetta
*Admitted Pro Hac Vice*
E-mail:  james.ughetta@littletonpark.com
Brian Keith Gibson
*Admitted Pro Hac Vice*
E-mail:  keith.gibson@littleonpark.com
LITTLETON, PARK, JOYCE, UGHETTA & KELLY, LLP
4 Manhattanville Road, Suite 202
Purchase, NY 10577
Tel:  914.417.3400

Attorneys for Defendant HJC Corporation

13017659.v1